*First Judicial District.*

## In the Court of Common Pleas of Philadelphia.
### (*In Equity.*)

## WOOD ET AL. *v.* MAITLAND ET AL.

One of several executors has the right to sell stock of his testator, and if he does actually agree to sell, and the price is paid, title passes—but one who deals with another holding a certificate with a power to sell and transfer, signed by the executor, does not obtain a valid security for a loan by the delivery of such certificate and power, unless as matter of fact, there had been a sale and payment of the price, so as to divest the title of the decedent.

Until actual transfer, the title of the purchaser of stock is merely equitable, and persons dealing with him, take the risk that the equitable title is such that he can compel a transfer of the legal title.

This was a motion to continue a special injunction.

Charles S. Wood died in May, 1873, being the owner of a number of shares of stock of the Cambria Iron Company, which stood in his own name. By his will he named four executors, all of whom took out letters.

George R. Wood, one of the executors, delivered a certificate for 1905 shares of this stock to McDowell & Wilkins, brokers in this city, such a power of attorney in the usual form reciting a sale to———and authorizing———as his attorney to sell and transfer the shares to———. This was signed by him as acting executor.

McDowell & Wilkins borrowed from Maitland & Audendried, $9000, and as collateral for the loan, agreed to give, and did give them this certificate and the accompanying power of attorney.

The other executors discovering the fact, filed a bill to have the certificate returned to them and for an injunction to restrain the transfer.

The motion was argued on Friday last. For the motion it was urged that the legal title to the stock was in the testator, and nothing was shown to displace that but an authority to sell which had never been executed in fact. And the lenders on stock took the risk, that the person they received it from, had a title or authority to deal with it in this way. That as

the executor could not pledge for such a debt, it lay on him to show that some one had by purchasing under the power acquired a title which he could lawfully use as a pledge.

For the defendants it was argued that it was admitted that an executor could sell the stock, and the authorities all agreed that a sale and payment of the price, and delivery of the certificate with a power to transfer, passed a perfect title as against execution creditors. As Maitland & Audendried had undoubtedly given value and no fraud was charged, they had thus acquired the title. At all events, they had certainly got the shares of the executor as a legatee, and this being so, the executors could not deprive them of the security, without redeeming.

Opinion delivered October 28th, 1873, by

PAXSON, J. The facts of the case, briefly stated, are as follows:—Charles S. Wood died on the 27th of May, 1873, leaving a last will and testament of which R. Francis Wood, George R. Wood, John N. Packard, and Charles S. Wurtz, were the executors named therein. Letters testamentary were issued to all of the said executors. At the time of his death the said testator was the owner of 20,385 shares of the capital stock of the Cambria Iron Company, the par of which is $12.50. Said stock is said to be worth considerably more than par, and to have paid 12 per cent. dividends for several years. George R. Wood, one of said executors, a defendant in this suit, for the purpose of securing a liability of his own to defendants, McDowell & Wilkins, who are partners as stock brokers in this city; and of aiding the latter in securing liabilities of their own to E. V. Maitland and William W. Audendried and others, delivered to the said McDowell & Wilkins divers certificates of the Cambria Iron Company, for stock of said company, held by or in the name of the said testator, together with as many powers of attorney signed by him, the said George R. Wood, as "acting executor" of Charles S. Wood, authorizing the transfer of the same by a person not named in the powers. One of these certificates, to wit, one for 1905 shares, with the power of attorney to transfer the same, was given by McDowell & Wilkins to Maitland, Audendried & Co., on the first day of October, 1873, to secure a loan of $9000, made on that day by the last named firm to said McDowell & Wilkins. The said shares have never been transferred on the books of the Cambria Iron Company. It is to prevent said transfer, and to restrain the said defendants, who are the holders of said certificate and power of attorney, from transferring or parting with the same that this bill has been filed.

The method of acquiring title to shares in incorporated joint stock companies is a subject of very grave importance. This species of property has multiplied to such an extent that a very large proportion of the capital of the country is invested in "shares." The daily transactions therein in our large commercial and moneyed centres are of great magnitude. Certificates and powers of attorney, representing immense sums of money, invested in such securities, pass from hand to hand with almost the rapid-

ity and ease of commercial paper, or money itself. It will thus be seen that the manner in which this species of property may be transferred is a matter of no inconsiderable interest.

The character of this kind of investment has been too well settled by legislative enactment and judicial construction to need discussion. While shares in a stock company are personal property, they are not, strictly speaking, chattels. It has been considered that they bear a greater resemblance to choses in action; or in other words, they are merely evidence of property. Angell & Ames on Corporations, Chapter XVI., section 2. They are, it has been said, mere demands of the dividends as they become due, and differ from movable property, which is capable of possession and manual apprehension. Denton *v.* Livingston, 9 Johns. R. 96; Wildman *v.* Wildman, 9 Ves. R. 177. There can be no such thing as an actual delivery of the shares. It is a general rule of law, that when a thing is intangible and incapable of actual delivery, there may be a symbolical delivery. The legal title of shares in a stock company can only be evidenced, and a transfer made, in writing. A certificate of stock may, however, be transferred by a blank endorsement, which may be filled up by the holder, by writing an assignment and power of attorney over the signature endorsed. Kortright *v.* The Buffalo Com. Bank, 20 Wind. (N. Y.) R. 91; Angell & Ames, above cited. It follows that a power of attorney, signed in blank, is sufficient to enable the holder to make the transfer. The delivery of such a power is an implied authority to fill up the blanks. The Building Association *v.* Sendmeyer, 14 Wr. 67. A person being the owner of shares of stock may sell, give away, or pledge them as he may any other article of personal property. The sale thereof, with receipt of the purchase money and delivery of the certificate, with a power of attorney to transfer, passes the full equitable title, and entitles the holder to demand the legal title. A person who purchases stock from the owner, or his duly authorized agent, has only to see that the vendor is owner of the same, and is entitled to a transfer by the rules of the company. The rule is different, however, when a person is acting in a fiduciary capacity. The principle may be generally stated that when one offers for sale the stock of another, the purchaser is bound to see that the former has authority to make the sale. A trustee has no such general power. His office is to hold and safely keep the trust funds in accordance with the terms of the will, or other instrument creating the trust. McMurtrie *v.* The Penna. Co , Legal Intelligencer vol. 29, p. 108. A trustee *may* be authorized to sell by the terms of his trust, or by order of the court; but the purchaser must see to this at his peril. An executor or administrator stands upon a different footing. His office is to administer the assets. This includes a power of sale; but even in the case of an executor, the stock in question may be specifically bequeathed, or there may be a special trust thereof.

In this case I do not find anything in the will of Charles S. Wood,

limiting the general power of sale incident to the office of executor. The executors had an undoubted right to make sale of this particular stock. Nor is there anything in the fact that the power of attorney was signed by but one of the executors. He signs as "acting executor," a term not unfrequently used, yet difficult of a precise legal meaning. It would seem to apply, if at all, to the case where only one executor has taken out letters testamentary. The law is well settled in this State, that executors may sever, may file separate accounts, and that one executor, separately acting, may convey personal property, as if all had joined. Hall *v* Boyd, 6 Barr 270; Irwin's Appeal, 11 Casey 296; McNair's Appeal, 4 Rawle 156; Richardson *v.* Richardson, 9 Barr 430; Doebly *v.* Snavely, 5 Watts 228; Still's Appeal, 10 Barr 153. It follows that if George R. Wood, executor, sold the stock in question to McDowell & Wilkins, and received the consideration therefor, it was a valid sale and passed the title.

In order to determine the rights of the present holders of these shares we must examine first, the transaction between Mr. Wood and McDowell & Wilkins, and second, between the latter and Maitland, Audenried & Co.

Assuming the facts as before stated, and as they appear upon bill and affidavits, it is clear there was no sale by the executor to McDowell & Wilkins. It was a mere pledge of the stock for an antecedent debt of the executor. In this age of defalcations and misappropriation of trust money, extending through National, State and municipal affairs, as well as those of private corporations and individuals, carrying in their train losses to public and private interests, as well as wide-spread distrust and alarm to all classes, I cannot designate this transaction as an indiscretion. It was a fraud; a deliberate attempt to use money held upon a sacred trust, for the personal ends of the executor. That McDowell & Wilkins, who received their shares from Wood, knew of this misapplication, is apparent from the face of the papers. The latter disclosed the fact that the stock belonged to the estate of Charles S. Wood. The brokers knew that the executor was pledging the stock for his own debt. As between these parties the transaction was illegal, and McDowell & Wilkins took no title to the stock.

It remains to consider the case as between McDowell & Wilkins, and Maitland, Audenried & Co. The latter disclaim all knowledge of any defect in their title.

It is an undoubted principle of equity that the owner of property may follow and reclaim it wherever he can find and identify it, until arrested in the pursuit by the countervailing equity of a *bona fide* purchaser for a valuable consideration paid. A purchaser with notice that the sale is a breach of trust, or a fraud upon the rights of the real owner, is *particeps criminis* with the fraudulent vendor, and his purchase cannot protect him against the owner, because such purchase is not *bona fide*. Gerard *v.* Pittsburg and Connellsville Railroad Company, 5 Casey 154. Whatever is sufficient to put a party upon inquiry, is in equity held to be good notice

to bind him.    Id.    Where a purchaser cannot make out a title but by a deed which leads him to another fact, he shall be presumed to have knowledge of that fact.    2 Fonbl. Equity 63, chap. 3, § 1, note (b).

The application of these familiar rules of equity to the facts of this case is not difficult.    This stock belongs to the estate of Charles S. Wood. Equity will follow and reclaim it until it is arrested in such pursuit by the finding of the stock in the hands of a *bona fide* purchaser without notice. By purchaser is meant one who has in good faith paid the consideration money.    Are Maitland, Audenried & Co. such purchasers?

They allege that they took this stock as collateral for a loan made to McDowell & Wilkins.    They do not pretend to have bought it.    Having taken but the equitable title, they are affected with notice of all such facts. as lie in the line of the legal title.    The papers which they hold as evidence of their equitable title, disclose the fact that the stock in question belongs. to the estate of Charles S Wood.    Also the fact that the said George R. Wood is one of the executors.    Further, that the said executor has executed a power of attorney authorizing an attorney, not named, to sell the stock and transfer the same, with a blank for the name of the purchaser.    Do these facts furnish conclusive evidence of a sale ?    On the contrary, the non-transfer of the stock to a purchaser, and the unfilled blanks are circumstances to put the purchaser upon his guard, and are notice to him that the transaction was *in fieri*.    The power has never been executed. Such power is subject to revocation, and this, notwithstanding present words of bargain and sale.    It is true it may not be revoked after an actual sale and payment of the purchase-money, for this is an execution of the power.

Maitland, Audenried & Co., being merely the holders of an equitable title, were bound to inform themselves what would be necessary to perfect it, and obtain the legal title.    Such inquiry, properly prosecuted, would have led to information of the fact that there never has been a sale of this. stock, and that the title thereto remains in the estate of Charles S. Wood.

It was urged upon the argument by the learned and able counsel for the defendants, that inasmuch as the interest of George R. Wood in his father's estate would exceed the amount of the stock so misapplied, the equities of the case could be reached by allowing the stock to remain in the hands of the brokers, and setting it off against his share of the estate. The argument is ingenious, but unsound.    The course indicated would amount to a partial distribution of the estate of Charles S. Wood in advance without sufficient information, or proper parties before us.    Our decree in such a case would not bind absent parties.    We can only know what the share of George R. Wood in his father's estate will be, when the executors. settle their account in the proper office.

The injunction heretofore granted in this case is continued until the further order of the court.

*Joseph B. Townsend* and *R. C. McMurtrie*, Esqs., for plaintiffs; *Wm. L. Hirst*, Esq., for defendants.